## SULLIVAN v. MURPHY.

### July 6, 1839.

*Rule to show cause why a new trial should not be granted.*

Trespass for injury to plaintiff's person.   Plaintiff and defendant were in a public bar-room ; defendant fell against a stove, and by his fall caused a vessel of hot water to upset, and the plaintiff was scalded : *Held*, if the fall of the defendant was a mere accident, brought about without any default or negligence, or any improper conduct on his part, he would not be responsible to the plaintiff for the injury ;—but if the fall was the effect of intoxication from drinking to excess, the defendant was liable.

THIS was a motion for a new trial by the plaintiff.

*Heiskell* and *Perkins*, for plaintiff.
*Doran*, for defendant.

The facts sufficiently appear in the opinion of the court, which was delivered by

Stroud, J.—This was an action of trespass.   The declaration alleged that the defendant had assaulted and beaten the plaintiff, thrown him on the floor, and cast scalding water upon him. Plea, *not guilty*, with leave, &c.

The evidence presented in this case, was that the plaintiff was

[Sullivan v. Murphy.]

sitting in the bar-room of a tavern in Shippen Street, behind and near a stove, upon which a vessel containing several gallons of hot water was placed, when the defendant, with some others, came in, procured and drank some brandy.   Shortly afterwards several other persons entered the same room, and the defendant and his friends who were then standing near the bar, stepped back to permit the last company to approach the bar.   At this juncture, but from what cause did not appear, the defendant stumbled, fell *backwards* against the stove with so much force that it was prostrated, and the vessel with the heated water, was projected, by this means, in the direction in which the plaintiff was sitting, and a considerable portion of the water was thrown on the plaintiff, and scalded him very severely.   It was proved that the defendant was *excited* with liquor when he entered the tavern, but in the opinion of the witnesses was not *drunk.*   The jury were instructed that, if they believed from the evidence, the fall of the defendant was a mere accident, brought about without any default or negligence or any improper conduct on his part, he would not be responsible to the plaintiff for the injury he received,—but if the fall was the effect of intoxication from voluntary drinking to excess, he was culpable, and the verdict should be for the plaintiff.

A new trial has been moved for, on the ground of misdirection in this charge.

The plaintiff's counsel rely on the case of Weaver *v.* Ward, *Hobart* 134, where the defendant, a soldier, exercising in the train-bands, fired his musket, charged with powder only, without intention of injury to the plaintiff, or any one else, and hurt the plaintiff; and on Underwood *v.* Hewson, 1 *Strange* 596, where the defendant's gun in uncocking it went off, and accidentally wounded the plaintiff, a bystander.

In the former of these cases, the defendant pleaded specially the circumstances under which the injury happened to the plaintiff, and on demurrer, judgment was given for the plaintiff.   The report of this case is very brief, but enough appears to show that the ground of the judgment was that the defendant had not discharged himself by the plea of *all fault,* for it is said, " no man shall be excused of a trespass except it may be judged *utterly without his fault,*" and it is added by way of illustration, " as if a man by force take my hand and strike you, or if here the

[Sullivan v. Murphy.]

defendant had said that the plaintiff ran across his piece when it was discharging, or had *set forth the case with circumstances so as it had appeared to the court that it had been inevitable,* and that the defendant had committed *no negligence,* to give occasion to the hurt."

Underwood *v.* Hewson, is comprised in the following short note:—" The defendant was uncocking a gun, and the plaintiff standing to see it, it went off and wounded him : and at the trial it was held that the plaintiff might maintain trespass."

Now, in regard to this latter case, all that can be inferred from it is, that the absence of *intention* to injure, will not, in itself, excuse a trespass. But that the defendant was not chargeable with negligence, is not stated, nor can it be at all implied. The note of the reporter is merely as to the ruling in a trial for a *trespass,* the special circumstances of which, with the exception of its being *unintentional,* are not given. The decision is an authority, and is usually cited for that purpose, to show that *trespass* and not *case* is the proper form of action for an *immediate* injury occurring *unintentionally* as to the aggressor, but yet not without his fault or negligence. See Leme *v.* Bray, 3 *East.* 595.

The direction complained of in the case at bar has no relation to the form of action. And in the aspect in which it was presented, it is abundantly fortified by reason and authority.

The earliest of reported cases on the subject is Mitten *v.* Faudrye, cited by Mr. Justice Aston, in Beckworth *v.* Shordike, 4 *Burr.* 2094, from the additions to Chief Justice Popham's Reports 161. The defendant with a little dog, chased the plaintiff's sheep out of his ground, where they were trespassing, and drove them off his own ground. They went into another man's ground, which had no hedge to divide it from the defendant's grounds, and they were contiguous. The dog *pursued* them into the *other* man's land, so next adjoining. The defendant as soon as the sheep were out of his own land, called in his dog and chid him. The owner of the sheep brought an action of trespass for *chasing* his sheep. The court gave judgment " quod querens nil capiat per billam," being of opinion, " that trespass lay not in that case, for they held it to be an *involuntary* trespass; whereas a trespass that may not be justified ought to be done *voluntarily.* They thought he might lawfully drive the sheep out of *his own* land with his dog; and he did his best endeavour to recall the dog when they were

[Sullivan v. Murphy.]

driven out of it, but the nature of a dog is such that he could not be recalled and withdrawn suddenly and in an instant. Therefore trespass did not lie against the defendant for what was done."

So in Wakeham v. Robinson, 1 *Bing.* 213, (8 *E. C. L. R.* 300,) Chief Justice Dallas thus states the law, having reference to an action of trespass for driving against a horse with a gig or injuring him. " If the accident happened entirely without default on the part of the defendant, or blame imputable to him, the action does not lie." To the same effect in Davis v. Saunders, 2 *Chitty's Reports* 639, (18 *E. C. L. R.* 437.) And in Knapp v. Salsbury, 2 *Campbell's Reports* 500, which was trespass for running against plaintiff's postchaise with a cart and killing one of the horses drawing the postchaise, by the shafts of the cart, the defence relied upon was, that the chaise and cart were travelling on the road in opposite directions, and that the collision between them took place through the negligence of the plaintiff, or *by mere accident*, and without any default on the part of the defendant.

That this would have been a complete defence if properly presented for adjudication is treated by *Lord Ellenborough* as one of the commonplaces of the law. "If," says he, "what happened arose *from inevitable accident*, or from the negligence of the plaintiff, *to be sure* the defendant is not liable," and see Milman v Dolwell, in the same book, 378.

A *nisi prius* case before Lord Chief Justice Denman, recognizes the same doctrine in its fullest extent. The syllabus of the case is this: " In an action of trespass for injury done to a horse, by a pony and chaise running against it, it was sworn on the part of the defendant, that his wife was holding the pony by the bridle, and a show-man came by and frightened the pony, who ran off with the chaise, *Held*, that if true, this was a good defence." Goodman v. Taylor, 5 *Car. & Payne* 410, (24 *E. C. L. R.* 385.)

Rule refused.